IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

ROGER SCOTT RILEY                                                                 PLAINTIFF

V.                                                                  CIVIL CAUSE NO. 1:24-CV-220-DAS

BRYAN POUNDERS, ET AL.                                        DEFENDANTS

<u>ORDER AND MEMORANDUM OPINION</u>

On December 20, 2024, Roger Scott Riley filed a Complaint [1] asserting claims under 42 U.S.C. § 1983 against Bryan Pounders, Timothy Chism, and Lee County, Mississippi.[1] On April 9, 2025, Lee County, Mississippi filed a Motion to Dismiss Denial of Medical Care Claim [29] and Pounders and Chism filed a Motion to Dismiss on Grounds of Qualified Immunity [31]. The motions have been fully briefed and are ripe for review.

*Relevant Factual Background*

The Complaint alleges that in the early morning of December 23, 2023, the plaintiff arrived on the scene of his son's automobile accident where the Lee County Sheriff's Office was present. He claims he was "approached by the Lee County Sheriff's officers in an aggressive manner; a taser was shot at and struck [him], and immediately thereafter, Defendants Bryan Pounders and Timothy Chism charged at and tackled [him] down to the ground and began to choke, strangle, and beat him in his side breaking ribs." The plaintiff maintains he was not impaired, he was never aggressive, and he complied with the officers' requests, yet he was charged with disorderly conduct and public drunkenness. He claims he "asked the officers for

---

[1] The Complaint contains claims under Title II of the Americans with Disabilities Act. Lee County, Mississippi, moved to dismiss those claims [11], and the plaintiff filed a Stipulation of Dismissal stating he would not pursue claims asserted under Title II of the Americans with Disabilities Act and did not oppose the motion to dismiss [22]. On March 31, 2025, the court granted Lee County, Mississippi's motion to dismiss the plaintiff's ADA claims [23].

medical attention due to his injuries sustained by the officers." After being transported to the Lee County Adult Detention Center (LCADC), the plaintiff was transported by ambulance to North Mississippi Medical Center (NMMC) where he was determined not to be intoxicated and found to have "broken ribs" and a bruised esophagus. He claims this resulted in "extensive treatment, including, but not limited to, an ultrasound of his neck." The plaintiff alleges he experienced "excruciating pain, increased pain, a reduction in the function of his neck and upper body, a reduction in his ability to perform activities of daily living and, for some time, a loss of ability to do meaningful work."

In this action, the plaintiff asserts claims for excessive force under the Fourth Amendment against Pounders and Chism in their individual capacities and denial of medical attention under the Fourteenth Amendment against Pounders, Chism, and Lee County. Pounders and Chism seek dismissal of the plaintiff's Fourth and Fourteenth Amendment claims, arguing they are entitled to qualified immunity for the plaintiff's failure to allege any facts establishing that their conduct violated a clearly established constitutional or federal statutory right. Lee County similarly maintains the plaintiff's claims should be dismissed for failure to allege a constitutional violation.

The plaintiff's responses to the motions to dismiss incorporate seven exhibits including medical records, justice court records, Officer Chism's dashcam videos, video from the Lee County Adult Detention Center, and bystander video footage. Exhibits F-1 and F-2 are dashcam videos from Officer Chism's patrol car. These videos show the incident from slightly different angles, and some audio is discernable. In both videos, the incident at issue spans approximately two minutes and occurs between the fifteen- and eighteen-minute marks. In the minutes leading up to the interaction, the plaintiff can be seen interacting with one of the officers for a short time

and then pacing the area of the road between a vehicle on the left side of the road and his son's vehicle on the right shoulder of the road in front of the patrol car.

After the fifteen-minute mark, the plaintiff is seen walking slowly toward Chism's patrol car where Chism is questioning the plaintiff's son. As the plaintiff exits the video frame, Pounders is heard instructing the plaintiff twice to "step in front of the vehicle" and a different voice says "step right there" followed by Pounders stating "you're under arrest" at which point the plaintiff reenters the frame while taking steps backwards with his hands extending from his sides. Chism deployed his taser and then charges at the plaintiff's torso, ultimately taking the plaintiff to the ground on his back. The plaintiff is lying on his back and only one of his arms is visible when Pounders then strikes his side twice before both officers forcibly roll the plaintiff onto his stomach, and Chism strikes the plaintiff another four times. An officer is heard yelling "Put your hands behind your back, put your hands…" and "You're not giving me your hands" before the plaintiff's hands are secured in handcuffs behind his back.

One officer walks into the road and instructs those standing nearby to "get back right now." During this time, the plaintiff is only attended by one officer, and there are no further signs of struggle between the two. That officer assists the plaintiff to an upright position and then to standing. The officer guides the plaintiff in front of the patrol car with his hands handcuffed behind his back without any apparent discomfort and out of the frame.

Exhibits H and I are videos recorded by Bryce Riley, a bystander. In Exhibit H, the bystander approaches the plaintiff as he is held face down on the ground while being handcuffed. The plaintiff asks, "What'd you arrest me for?" and one of the officers replies "Disorderly conduct." The bystander then takes several steps backwards after the other officer directs him to

get back. Exhibit I is a twenty-four-second video showing the officers escorting the plaintiff toward the patrol car while handcuffed behind his back.

Exhibit G contains the security footage from the LCADC. The footage shows that the plaintiff entered the booking area at 3:12 a.m. He walked into the booking area unassisted and sat on the bench. He can be seen leaning back against the wall with his legs crossed and at times leaning forward toward the officer completing the booking process. At 3:18 a.m., the plaintiff is left alone is the booking area and sits calmly on the bench until the end of the footage at 3:23 a.m.

In both of plaintiff's responses to the motions to dismiss, he argues "[t]here are genuine issues of material fact" precluding a finding of qualified immunity and dismissal of the denial of medical care claims. Accordingly, the defendants' reply briefs submit arguments both under Rule 12(b)(6) and Rule 56 considering the plaintiff's summary-judgment-styled arguments and the evidence submitted outside the pleadings.

*Legal Standard*

The Court first must determine the appropriate standard to apply to the motions to dismiss. In ruling on a Rule 12(b)(6) motion, the court is required to consider facts alleged in the operative complaint and "written instruments" attached to it. Fed. R. Civ. P. 10(c); *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citations omitted). If matters beyond these are presented, the court has "complete discretion" to exclude them. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988) (citations omitted). On the other hand, "[i]f ... matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Here, the plaintiff's responses to the motions to dismiss contain extensive matters outside the pleadings, and he makes arguments consistent with the summary judgment legal standard under Rule 56. While the defendants urge the court to dismiss the plaintiff's claims under the Rule 12(b)(6) standard for failure to plead facts sufficient to state a claim, they alternatively submitted arguments under the Rule 56 standard should the court convert their motions to motions for summary judgment. Accordingly, the court finds the parties have had a "reasonable opportunity to present all the material that is pertinent to the motion[s]." Fed. R. Civ. P 12(d). Because the court intends to consider the exhibits submitted in support of the plaintiff's responses, it will treat the defendants' motions as motions for summary judgment.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Abdallah v. Mesa Air Grp., Inc.*, 83 F.4th 1006, 1012 (5th Cir. 2023) (quotation marks and citation omitted). The court must resolve all reasonable doubts in favor of the non-movant. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

However, when there is video evidence in the record, courts are not bound to accept the plaintiff's version of the facts if it is contradicted by the video. *Crane v. City of Arlington, Texas*, 50 F.4th 453, 461–62 (5th Cir. 2022). "[I]nstead, the court should view those facts 'in the light depicted by the videotape.'" *Craig v. Martin*, 49 F.4th 404, 409 (5th Cir. 2022) (quoting *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)). This is so long as the "video evidence provides so much clarity that a reasonable jury could not believe his account." *Crane*, 50 F.4th at 462.

*Discussion*

I. *Pounders and Chism's Motion to Dismiss on Grounds of Qualified Immunity*

   a. *Qualified Immunity*

"Qualified immunity shields government officials performing discretionary functions from civil liability as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Woods v. Carroll Cnty., Miss.*, 2009 WL 1619955, at *2 (N.D. Miss. June 9, 2009) (citing *Huang v. Harris Cnty.*, 264 F.3d 1141 (5th Cir. 2001)). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). To overcome qualified immunity, a plaintiff must make two allegations: first, that an officer acted under color of state law and violated a constitutional right. *Hodge v. Engleman*, 90 F.4th 840, 844 (5th Cir. 2024). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* (*quoting Saucier v. Katz*, 533 U.S. 194, 201 (2001) (limited by *Pearson v. Callahan*, 555 U.S. 223 (2009)). If a constitutional violation would have occurred under the conduct alleged, then, second, the court considers whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *Reese v. Gray*, 2011 WL 302873, at *4 (N.D. Miss. Jan. 27, 2011) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)).

   b. *Fourth Amendment - Excessive Force*

"To prevail on a Fourth Amendment excessive force claim, a plaintiff must show '(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Craig v. Martin*, 49 F.4th 404, 409 (5th

Cir. 2022) (quoting *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009)). With respect to the first element, "the plaintiff's asserted injury must be more than *de minimis*." *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007) (citing *Glenn*, 242 F.3d at 314). As to the second element, the Fifth Circuit "distinguish[es] between injuries resulting from excessive force and those resulting from the justified use of force." *Dunn v. Denk*, 79 F.3d 401, 403 (5th Cir. 1996) (en banc). Finally, as to the third element, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Carroll*, 800 F.3d at 173–74 (quoting *Graham v. Connor*, 490 U.S. 386, 396–397 (1989)). It "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id*. at 396 (internal quotation omitted).

The Supreme Court has "identifie[d] several factors bearing on the reasonableness of force: with 'careful attention to the facts and circumstances of each particular case,' courts consider 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Cloud v. Stone*, 993 F.3d 379, 384 (5th Cir. 2021) (quoting *Graham*, 490 U.S. at 396). Because "distinct moments of force must be separately analyzed, the court will evaluate Chism's use of the taser before turning to Pounders' and Chism's takedown of the plaintiff and their use of handcuffs. *Tucker v. City of Shreveport*, 998 F.3d 165, 175 (5th Cir. 2021).

> i. Taser

The plaintiff's Complaint alleges he "was approached by the Lee County Sheriff's officers in an aggressive manner [and] a taser was shot at and struck [him]."[2] He maintains "at all times prior to this incident, [he] complied with the officers' requests and was an innocent bystander." The defendants admit "Corporal Chism deployed his taser after Pounders advised Plaintiff two times that he was under arrest" but contend "[t]he taser prongs did not make a connection to Plaintiff, thus they did not cause any injury, consequently there is no grounds for an excessive force claim on this issue, as no injury = no claim."

The initial portion of the altercation between the defendants and the plaintiff occurred outside the view of the dashcam camera; however, the audio reveals the officers twice instructed the plaintiff to "step in front of the vehicle" and once told him to "step right there" before advising him twice that he was under arrest. The video footage contradicts the plaintiff's allegation that he complied with the officers' requests as he never steps in front of the vehicle. The video further contradicts the plaintiff's allegation that he was struck by the taser. After the officers told the plaintiff he was under arrest, he reenters the video frame and is seen walking backwards when the electric discharge from the taser is visible firing to the side of, but not directly onto, the plaintiff's body. The plaintiff does not physically react when the taser is deployed but continues walking backwards, indicating the taser made no contact with any part of his body. Therefore, the court declines to accept the plaintiff's version of events regarding the use of a taser set forth in the Complaint. In analyzing the plaintiff excessive force claim

---

[2] The plaintiff's response in opposition describes the incident in greater detail and conversely states he was walking *toward* the defendants to inquire why they were handcuffing his son. The dashcam footage supports this version of the facts – that the plaintiff initially walked toward the defendants, not that they approached him.

regarding the officer's use of a taser, the court view the facts "in the light depicted by the videotape." *Craig*, 49 F.4th at 409.

Turning to whether a constitutional violation occurred, the court first considers whether the plaintiff suffered an injury. *See Craig,* 49 F.4th at 409. Neither the Complaint nor the plaintiff's response in opposition to the instant motion claim the plaintiff suffered an injury due specifically to Chism's alleged use of a taser. Rather, the Complaint only generally alleges the plaintiff "suffered and continues to suffer economic, physical, and emotional injury." Simply stating one has suffered from an unidentified physical injury is insufficient to support a claim of excessive force. *See e.g. Jackson v. Culbertson,* 984 F.2d 699, 700 (5th Cir. 1993) (Although plaintiff "need not show a significant injury, he must have suffered at least some injury."); *Ikerd v. Blair,* 101 F.3d 430, 434 (5th Cir. 1996); *Williams v. Bramer,* 180 F.3d 699, 704, n. 3 (where there is no evidence in the record to substantiate alleged injuries for mental distress, embarrassment, mental anguish and humiliation, such injuries are not recognized by the court).

Moreover, it is apparent from the video that the taser prongs or its electric discharge did not make contact with the plaintiff, and further, the plaintiff's medical records do not make any reference to the use of a taser or an injury occasioned by a taser on the plaintiff's person. The plaintiff has failed to show that in deploying a taser, Chism used *any* force against him, let alone that their conduct was excessive or unreasonable. With respect to the use of a taser, the plaintiff has failed to establish that Chism used excessive force in violation of the Fourth Amendment.

The court will now turn to the officers' actions in taking the plaintiff to the ground.

*ii. Takedown*

The plaintiff's Complaint alleges Pounders and Chism used excessive force when they "charged at and tackled [him] to the ground and began to choke, strangle, and beat him in his side breaking ribs." The plaintiff contends he was walking toward the officers who were handcuffing his son to ask what was going on when he was told he was under arrest. He claims he "continue[d] to question what [was] going on, beg[an] to back up, and raise[d] his hands" when Chism shot him with a taser and then tackled him to the ground where Pounders started punching him with a closed fist. The plaintiff claims Chism put him in a chokehold. Next, the plaintiff states he was rolled onto his stomach, and the defendants punched him repeatedly. The plaintiff unequivocally claims "[a]t no time did [he] resist the officers; [he] was, at all times during the event, non-threatening, non-combative, and not aggressive." He claims he "never resisted arrest, posed no threat to the officers, and was compliant throughout the event."[3]

The dash cam footage tells a different story. As discussed herein, the plaintiff was given three verbal commands to step in front of the vehicle and was told twice that he was under arrest. The video evidence establishes that the plaintiff did not comply with the officers' requests to step in front of the vehicle as he does not reenter the video frame until after being told he is under arrest. Once informed he is under arrest, the video shows the plaintiff retreating from the

---

[3] The plaintiff has not submitted any sworn testimony in support of these, or any of his, claims. Under Federal Rule of Civil Procedure 56, unsworn pleadings and arguments in briefs do not satisfy the requirements for summary judgment proof. *See Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (finding pleadings are not summary judgment evidence); *Domain Prot., LLC v. Sea Wasp, LLC*, 426 F. Supp. 3d 355, 369 (E.D. Tex. 2019), *aff'd sub nom. Domain Prot., L.L.C. v. Sea Wasp, L.L.C.*, 23 F.4th 529 (5th Cir. 2022) ("Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden."). To establish a genuine issue of material fact sufficient to overcome summary judgment, the evidence presented must comply with the rules relating to the form and admissibility of evidence. *See Munoz v. Int'l All. of Theatrical Stage Emp. & Moving Picture Mach. Operators of U. S. & Canada*, 563 F.2d 205, 213 (5th Cir. 1977). Evidence not meeting these criteria is insufficient to overcome summary judgment.

officers, thus contradicting the plaintiff's allegation that he "complied with the officers' requests" and "never resisted arrest." This is further evidenced by the plaintiff's resistance to being rolled onto his stomach and handcuffed. In this process, an officer can be heard yelling "put your hands behind your back, put your hands…" and "you're not giving me your hands."

The plaintiff's medical records contradict the extent and severity of his alleged injuries. The plaintiff alleges he suffered broken ribs and a bruised esophagus as a result and "experienced excruciating pain, increased pain, a reduction in the function of his neck and upper body, a reduction in his ability to perform activities of daily living, and, for some time, a loss of the ability to do meaningful work." The medical records show he had a nondisplaced right exterior eighth rib fracture but otherwise do not support his allegations that he had "broken ribs" (plural) or "a reduction in the function of his neck and upper body, a reduction in his ability to perform activities of daily living, …[or] a loss of the ability to do meaningful work." Accordingly, the court does not accept these allegations of medical injuries as true. *See Bruton v. Shreveport Police Dep't Officers*, 2019 WL 8220665, at *4 (W.D. La. Oct. 15, 2019), *report and recommendation adopted*, 2020 WL 1231415 (W.D. La. Mar. 12, 2020) (on motion for summary judgment, where medical records did not support allegations of medical injuries, the court did not accept allegations as true).

Rather, the medical records show the plaintiff complained of "some right sided rib pain with a contusion noted and no edema or deformity noted" and "throat pain with a contusion noted midline of the neck." The chest x-ray revealed the fractured rib for which the plaintiff received "symptomatic care;" and a neck x-ray found "no soft tissue swelling" and "normal soft tissues of the neck." Taking as true the severity of the plaintiff's injuries as outlined in the medical records, most of the plaintiff's injuries, excepting the rib fracture, were of type the Fifth

Circuit has held to be *de minimis*. *Buehler v. Dear*, 27 F.4th 969, 982-83 (5th Cir. 2022) (finding incidental injuries such as abrasions, back and neck pain, bruising, and mental anguish "are properly characterized as 'minor' for purposes of excessive-force analysis"). Even considering the more severe rib fracture, the LCADC security camera footage shows the plaintiff seated calmly and easily moving around without any indication of physical distress.

Turning to the reasonableness of Pounders' and Chism's use of force, the court must evaluate this sequence of events considering their reasonable perception as it unfolded *without* the aid of hindsight, slow motion, or the ability to pause, rewind, and zoom. *Tucker v. City of Shreveport*, 998 F.3d 165, 176 (5th Cir. 2021). With this framework in mind, the court finds the force the defendants used in arresting the plaintiff was not objectively excessive or clearly unreasonable. The defendants repeatedly commanded the plaintiff to step in front of the patrol car, yet he did not do so. While the incident escalated in a matter of seconds, the plaintiff's resistance was immediate and persistent. The Fifth Circuit has acknowledged that arrests are "inherently dangerous and can escalate precipitously if the arrestee is not overcome immediately." *Poole v. City of Shreveport*, 691 F.3d 624, 631 n.6 (5th Cir. 2012). Here, the escalation started when the plaintiff actively resisted Pounders' and Chism's multiple commands and began backing away, and Pounders and Chism responded to gain control. *See Solis v. Serrett*, 31 F.4th 975, 982–83 (5th Cir. 2022) (even an arrestee who only "backs away from the arresting officers is actively resisting arrest—albeit mildly") (quoting *Buehler v. Dear*, 27 F.4th 969, 984 (5th Cir. 2022)).

This is the sort of "tense, uncertain, and rapidly evolving" situation that police officers often face in the performance of their duties. *See Graham*, 490 U.S. at 397. The defendants were engaged in a separate arrest and were facing at least two other individuals (the plaintiff and

Bryce Riley), and potentially others, who arrived on the scene late at night in a dimly lit and remote area. While the plaintiff's alleged disorderly conduct and public drunkenness offenses are crimes of minor severity, the offenses themselves support that a reasonable officer would have viewed the plaintiff as a potential threat under these circumstances. The plaintiff refused verbal commands and then physically resisted the defendants' attempt to handcuff him at each stage of the interaction, posing an immediate threat to the safety of the officers. *Poole*, 691 F.3d at 629 (a suspect who "refus[ed] to turn around and be handcuffed, posed an 'immediate threat'"). Once the plaintiff was handcuffed, all force ceased immediately. Considering the circumstances confronting the Pounders and Chism, their decision to use this degree of force, which included taking the plaintiff to the ground and delivering side blows to effectuate the arrest, was not objectively unreasonable and thus did not violate the Fourth Amendment.

   iii.  *Handcuffing*

For the first time in his response brief, the plaintiff argues the defendants used excessive force when Pounders handcuffed him behind his back. The response states

> [d]uring the assault [...] and immediately thereafter, [the plaintiff] told the officers he was severely injured in his chest area and ribs. Nevertheless, they proceeded to place the handcuffs on [him] behind his back; [he] immediately pleaded to have the handcuffs moved to the front of his body and not behind him. But Pounders and Chism, contrarily, handcuffed [him] with his arms behind him in a manner that exacerbated the injuries inflicted upon him.

The Complaint contains none of these allegations. It only claims the plaintiff "asked the officers for medical attention due to his injuries sustained by the officers" and charges the defendants with acting "in an objectively unreasonable manner, and with deliberate indifference, and reckless disregard for [his] known serious medical condition by failing to provide him with adequate or any medical attention after choking, strangling, and beating him in his side." There are simply no allegations in the Complaint related to the act of handcuffing, requests to place the

handcuffs in front of the plaintiff's body, or injuries resulting therefrom. Setting aside the fact that there is no competent summary judgment evidence before the court regarding these allegations,[4] the plaintiff still fails to establish a constitutional violation.

Relying on cases outside this circuit, the plaintiff cites the general proposition that when an officer has knowledge of an injury or condition, handcuffing a detainee behind his back may qualify as excessive force. Yet, the Fifth Circuit has made certain that "minor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest" are *de minimis* and therefore "do not give rise to a constitutional claim for excessive force." *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007). In *Freeman*, "the most substantial injury claimed by Freeman [was] that she suffered bruising on her wrists and arms because the handcuffs were applied too tightly when she was arrested." *Freeman*, 483 F.3d at 417. In *Glenn v. City of Tyler*, the plaintiff alleged that handcuffs were applied too tightly and caused one of her wrists to swell. *Glenn*, 242 F.3d 307, 314 (5th Cir. 2001). In *Templeton v. Jarmillo*, the plaintiff alleged that a tight handcuffing caused pain in his shoulder. *Templeton*, 28 F.4th 618, 623 (5th Cir. 2022). In each of these cases, the Fifth Circuit held the use of force incident to handcuffing was constitutional.

Here, the plaintiff's alleged physical pain caused by the handcuffs placement behind his back does not overcome the *de minimis* standard. There is no evidence that the plaintiff had any scars, bruises, or cuts due to being handcuffed behind his back, and there is no hint of any injury incident to the use of handcuffs in the plaintiff's medical records. Even if the court were to find such an injury, there is no evidence Pounders or Chism had any such knowledge. There is simply no evidence that the plaintiff was "treated in a manner objectively outside the scope of handcuffing in the ordinary course of an arrest," and therefore, this claim does not give rise to a

---

[4] *See* fn. 3, *supra*.

constitutional claim for excessive force. *Juarez v. Pizana*, 2018 WL 7198152, at *7 (W.D. Tex. Dec. 12, 2018).

In sum, the court finds Pounders' and Chism's actions were reasonable under the circumstances and did not violate the Fourth Amendment. Therefore, the plaintiff's Fourth Amendment claims for use of excessive force against Pounders and Chism in their individual capacities are dismissed.

　c.　*Fourteenth Amendment – Denial of Medical Care*

The Fourteenth Amendment guarantees detainees the right "not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001). This guarantee "require[s] the responsible government or governmental agency to provide medical care to persons ... who have been injured while being apprehended by the police." *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 279 (5th Cir. 2015).

To prevail on a claim of deliberate indifference under the Fourteenth Amendment, "[t]he plaintiff must show that an officer acted with subjective knowledge of a substantial risk of serious medical harm, followed by a response of deliberate indifference." *Mason*, 806 F.3d at 279 (quoting *Hill v. Carroll Cnty.*, 587 F.3d 230, 238 (5th Cir. 2009)). "Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001). "[The] plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* (quotation marks omitted) (quoting *Domino*, 239 F.3d at 756)).

The plaintiff's factual allegations in support of his claim for deliberate indifference are narrow: he states he "asked the officers for medical attention," was transported to the LCADC, and then placed in an ambulance and transported to NMMC. He claims in a conclusory fashion that the defendants "acted in an objectively unreasonable manner, and with deliberate indifference, and reckless disregard for [his] known serious medical condition by failing to provide him with adequate or any medical attention after choking, strangling, and beating him in his side." He contends that due to this alleged failure, he experienced "increased pain, a reduction in the function of his neck and upper body, a reduction in his ability to perform activities of daily living, and for some time, a loss of the ability to do meaningful work."[5]

The plaintiff's brief argues that Pounders and Chism had "actual knowledge" that he had been severely injured and claims he complained that the placement of the handcuffs "was exacerbating his pain and making it difficult to breathe," yet they refused to take him to the hospital. These unsupported and "unsubstantiated assertions" are not competent summary judgment evidence. *See* fn. 3, *supra*; *see also*, *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) ("The non-movant cannot avoid summary judgment, however, by merely making 'conclusory allegations' or 'unsubstantiated assertions.') (quoting *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994)). Nevertheless, even drawing all reasonable inferences in the plaintiff's favor, his medical condition did not pose a serious risk of harm, and the alleged conduct does not rise to the level of deliberate indifference.

When considering whether the plaintiff was at risk of serious harm, not "just any harm" will suffice; rather, the medical need must be "so apparent that even laymen would recognize

---

[5] The court addressed these medical assertions *supra* and concluded there is no evidentiary support for the plaintiff's claims that he suffered "a reduction in the function of his neck and upper body, a reduction in his ability to perform activities of daily living, …[or] a loss of the ability to do meaningful work."

that care is required." *Carmona v. City of Brownsville*, 126 F.4th 1091, 1097 (5th Cir. 2025) (quoting *Rogers v. Jarrett*, 63 F.4th 971, 976 (5th Cir.), *cert. denied*, 144 S. Ct. 193 (2023)). Review of the LCADC security footage reveals a reasonable jury could not conclude on this record that the plaintiff was at risk of serious harm, much less that Pounders and Chism were subjectively aware of such a severe condition. The LCADC security footage shows that the plaintiff walked into the booking area at 3:12 a.m. unassisted and sat on the bench without demonstrating any signs of distress. He is seen leaning back against the wall with his legs crossed and at times leaning forward toward the officer completing the booking process. While he frequently adjusts his positioning while seated, nothing about the plaintiff's demeanor suggests that he was at risk of serious harm if he did not receive medical attention. Viewing the footage in the light most favorable to the plaintiff, his repositioning *could* be interpreted as indicative of some bodily discomfort; however, at that point in the footage (around 3:20 a.m.), an EMS unit was already en route to the LCADC.

  EMS records document that a unit was dispatched at 3:19 a.m., responded to the plaintiff at 3:28 a.m., and departed for the hospital at 3:38 a.m. [39-1 at 10]. The "Narrative" portion of the EMS record states:

> Upon arrival, EMS finds patient sitting in the booking department of the sheriff department. Patient informed EMS that he was involved in an altercation with law enforcement officers. Patient stated that he is experiencing some right sided rib pain with contusion noted and no edema or deformity noted. Patient also complained of throat pain with a contusion noted midline of the neck. Patient assessed and treated.

The "Assessment Summary" notes the plaintiff was oriented to person, place, and time and had normal gait, speech, and strength. Further his primary complaint was that his ribs hurt for the past two hours. As detailed *supra*, the plaintiff's emergency room treatment records show that he

did not suffer a serious medical condition. He was treated with fifteen mg of torodol and was discharged around 5:30 a.m., approximately two hours after his arrival.

The complete absence of a serious risk of medical harm is fatal to the plaintiff's claim for the denial of medical care. Yet, even if the plaintiff did experience such a risk, there is no evidence the officers acted with deliberate indifference. The defendants did not refuse to treat him or ignore his complaints, and there is no evidence they intentionally treated him incorrectly or engaged in any conduct demonstrating a wanton disregard for his medical needs. The plaintiff has altogether failed to show that the defendants responded to his medical needs with deliberate indifference. Accordingly, the plaintiff's Fourteenth Amendment claims against Pounders and Chism are dismissed.

## II. Lee County, Mississippi's Motion to Dismiss Denial of Medical Care Claim

The court now turns to Lee County, Mississippi's motion to dismiss the denial of medical care claim, the only claim asserted against Lee County in the plaintiff's Complaint. The plaintiff alleges Lee County "had in place, at all relevant times to this civil action, unconstitutional policies, practices, customs or usages which authorized and/or mandated and/or condoned and/or ratified the denial of medical attention to detainees with known serious medical conditions."

Municipal liability under § 1983 requires proof of (1) a policymaker, (2) an official policy, (3) a constitutional violation, and (4) a violation of that constitutional right whose "moving force" is "the policy or custom." *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't. of Social Services,* 436 U.S. 658, 694 (1978)). However, "without an underlying constitutional violation, an essential element of municipal liability is missing." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 866–67 (5th Cir. 2012). In *City of Los Angeles v. Heller*, the Supreme Court held that a county could not be liable under § 1983 based on the actions of one of its police officers because a jury had

already concluded that the police officer did not inflict any constitutional harm. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam); *see also Bustos v. Martini Club Inc.*, 599 F.3d 458, 467 (5th Cir. 2010) (rejecting municipal liability in a similar situation); *see also Cardenas v. San Antonio Police Dep't*, 417 F. App'x 401, 402 (5th Cir. 2011) (per curiam) (holding that, because "individual defendants did not inflict any constitutional harm on [plaintiff], the district court properly granted summary judgment for the City").

Having held that neither of the individual defendants violated the plaintiff's right to medical care, the plaintiff's claims against Lee County, Mississippi cannot survive, and summary judgment is warranted.

*Conclusion*

For the reasons set forth above, Pounders and Chism's and Lee County, Mississippi's dispositive motions are GRANTED. The plaintiff's claims are dismissed *with prejudice*. This CASE is CLOSED.

SO ORDERED, this the 17th day of September, 2025.

/s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE